O

# United States District Court
# Central District of California

| | |
|---|---|
| FULWIDER PATTON LLP,<br><br>          Plaintiff,<br><br>     v.<br><br>ACCENTRA, INC.,<br><br>          Defendant. | Case 2:14-cv-08687-ODW (MRWx)<br><br>**ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT [16]** |

## I. INTRODUCTION

Plaintiff Fulwider Patton LLP ("Fulwider") is a law firm which specializes in intellectual property. On November 10, 2014, Plaintiff filed suit against Defendant Accentra Inc. ("Defendant") alleging that Defendant failed to compensate Plaintiff for legal services provided pursuant to a written agreement. (ECF No. 1.) Defendant failed to answer, default was entered, and Plaintiff now moves for entry of default judgment. (ECF Nos. 14, 16.) For the reasons discussed below, the Court **GRANTS** Plaintiff's Application for Default Judgment. (ECF No. 16.)

## II. FACTUAL ALLEGATIONS

On March 20, 2007, Defendant retained Plaintiff to provide legal services pursuant to a written agreement. (Compl. ¶ 7; Juo Decl. Ex. A.) The Written Agreement provides the terms and conditions of Plaintiff's employment and

compensation. (Juo Decl. Ex. A.) Todd Moses, the President and CEO of Defendant, signed the Written Agreement, at which point the Written Agreement went into effect.[1] (*Id*.)

From September 2007 through December 2010, Plaintiff represented Defendant in Defendant's action against Staples, Inc. ("Staples") for patent infringement.[2] (Juo Decl. ¶ 4; *see also* Juo Decl. Exs. B, C.) During this time, Plaintiff sent Defendant periodic billing invoices. (*See* Brashear Decl. Ex. 1.) From September 30, 2007 through April 30, 2009, Plaintiff provided Defendant with monthly billing invoices. (Brashear Decl. Ex. 1.) After April 30, 2009, the periods between billing invoices became more dispersed.[3] (*Id.*)

Defendant made payments on these invoices from November 8, 2007 through August 4, 2009. (*Id.*) Further, Plaintiff credited these payments to Defendant's account on April 30, 2010, June 16, 2010, and November 30, 2010. These payments fully satisfied the invoices from September 30, 2007 through August 31, 2008 and 70 percent of the September 30, 2008 invoice. (*Id.*) Plaintiff allocated none of Defendant's payments to the invoices dated October 31, 2008 through December 31, 2010—Defendant's payments over this time were applied to back-payments for earlier invoices. (*Id.*)

On November 10, 2014 Plaintiff filed a Complaint in federal court alleging breach of written contract and account stated. (ECF No. 1.) Proof of Service on Defendant was filed on November 17, 2014, requiring Defendant to answer by December 12, 2014. (ECF No. 7.) On December 2, 2014, Plaintiff filed a stipulation extending Defendant's time to answer to January 14, 2015. (ECF No. 8.) The

---

[1] "CONDITIONS. This agreement will not take effect, and we will have no obligation to provide legal services, until you [Accentra] return a signed copy of this agreement…." (Juo Decl. Ex. A.)

[2] Although the Written Agreement provides that Defendant retained Plaintiff for legal representation in its countersuit against ACCO Brands USA LLC, it also provides that the agreement covers Plaintiff's work on related lawsuits. (Juo Decl. Ex. A.)

[3] After the April 30, 2009 invoice, Plaintiff sent Defendant invoices on the following dates: August 31, 2009; March 31, 2010; April 30, 2010; May 31, 2010; September 30, 2010; November 30, 2010; and December 31, 2010.

stipulation was stricken on January 21, 2015 for failure to provide the case number. (ECF No. 10.) Plaintiff corrected this error and refiled the stipulation. (ECF No. 11.) However, Plaintiff's second stipulation was deficient because it failed to include the signature of both parties. (ECF No. 12.) Plaintiff never corrected this issue; however, the Court recognizes Defendant has refused to participate in the instant action.

On January 29, 2015, default was entered against Defendant. (ECF No. 14.) On February 4, 2015, Plaintiff filed the instant Application for Default Judgment. (ECF No. 16.) Plaintiff seeks: (1) $282,247.80 in liquidated damages and (2) pre-judgment interest on the foregoing amount at 10 percent per annum from February 1, 2011 to date of payment pursuant to California Civil Code sections 3287(a) and 3289(b). (*Id.*)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a). Local Rule 55-1 requires that the movant submit a declaration establishing (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice.

A district court has discretion whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors, including (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default

was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### IV. DISCUSSION

**A. Notice**

Plainitff properly served Defendant on November 13, 2014. (ECF No. 7.) Pursuant to California Code of Civil Procedure section 416.10(a), Plaintiff served Dominick Carmagnola—a designated agent for service of process. (*Id.*) Pursuant to section 415.20(a), Plaintiff effected substituted service upon Carmagnola by leaving a copy of the Summons and Complaint at Carmagnola's place of business at 10:54 a.m. with Margery Ziobro—the person in charge of the office. (*Id.*) Plaintiff also attached a Declaration of Mailing to its Proof of Service stating the Complaint and Summons were served on Ziobro. (*Id.*) Therefore, the Court finds that Plaintiff fulfilled the mailing requirement of section 415.20(a). (*Id.*)

**B. *Eitel* Factors**

The Court finds that the *Eitel* factors weigh in favor of default judgment.

### *1. Plaintiff Would Suffer Prejudice*

If the Court does not grant default judgment, the case will be at a standstill. Defendant had ample opportunity to participate in the adjudicatory process and help the Court resolve this matter.

### *2. Plaintiff Has Brought Meritorious Claims*

Breach of Written Contract

Plaintiff established Defendant breached a written contract. To succeed under this claim Plaintiff must establish: (1) the existence of a contract with Defendant; (2) that it performed under the terms of the contract; (3) that Defendant breached the contract; and finally (4) that it was harmed as a result of Defendant's breach. *First Commercial Mortgage Co. v. Reece*, 108 Cal. Rptr. 2d 23, 33–34 (2001).

First, Plaintiff established the existence of a contract with Defendant. The

Written Agreement between Plaintiff and Defendant details the scope of Plaintiff's legal representation of Defendant as well as the terms and conditions of Plaintiff's compensation. (Juo Decl. Ex. A.) Todd Moses, President and CEO of Defendant, returned a signed copy of the Written Agreement to Plaintiff. (*Id.*) Consequently, the Written Agreement went into effect. (*Id.*) Additionally, that Defendant made payments to Plaintiff pursuant to the terms of the Written Agreement is further evidence that Defendant could not legitimately dispute the existence of a contract. (Brashear Decl. Ex. 1.)

Second, Plaintiff established the terms of the contract and that it performed under those terms. Under the Written Agreement, Defendant retained Plaintiff for legal services related to its countersuit against ACCO for patent infringement.[4] (Juo Decl. Ex. A.) In September 2007, Defendant advised Plaintiff to file suit against Staples for infringing the same patent litigated in the ACCO countersuit. (Juo Decl. ¶ 4.) Pursuant to that legal advice, Plaintiff, under case number 2:07-cv-05862, researched, drafted legal documents, deposed witnesses, and filed ten pleadings. (*Id.* at ¶¶ 5–9; *see also* Juo Decl. Exs. B, C.) Plaintiff stopped representing Defendant in December 2010. (Juo Decl. ¶ 11.)

Third, Plaintiff established Defendant materially breached the Written Agreement by failing to pay for legal services and litigation costs Defendant was obligated to pay pursuant to the contract. (Mot. 5.) Under the Written Agreement, Defendant was obligated to pay Plaintiff's bills on time. (Juo Decl. Ex. A.) Specifically, the Written Agreement provided "[e]ach statement will be due within 30 days of its receipt." (*Id.*) Because Plaintiff seeks the full balance of Defendant's account, $282,247.80, it must establish that Defendant failed to pay the last invoice dated December 31, 2010, which contained that balance. (Mot. 5.) Plaintiff alleges that it sent the December 31, 2010 invoice to Defendant in January 2011 and

---

[4] "Absent some different agreement, this letter governs the litigation related services that we [Fulwider] perform on behalf of Defendant." (Juo Decl. Ex.A.)

Defendant failed to make any payment on that invoice. (*Id.*) Under the terms of the Written Agreement, Defendant's failure to pay constitutes a breach. (Juo. Decl. Ex. A.)

Fourth, Plaintiff established it suffered harm as a result of Defendant's breach. Defendant failed to compensate Plaintiff for legal services performed on its behalf. (*See* Brashear Decl. Ex. 2.) Currently, Plaintiff is owed $282,247.80 in unpaid services. (*Id.*)

The Court recognizes a potential "duty to mitigate" issue. The "duty" to mitigate is not an affirmative duty but limits the amount of recovery—specifically, a plaintiff may not recover damages it could have reasonably avoided. (*Commodity Credit Corp. v. Rosenberg Bros & Co.*, 243 F.2d 504, 511 (9th Cir. 1957) ("[W]here a party is entitled to the benefit of a contract and can save himself from a loss arising from a breach of it at a trifling expense or with reasonable exertions, it is his duty to do it; and he can charge the delinquent with such damages only as, with reasonable endeavors and expense, he could not prevent."). The issue is whether Plaintiff should be able to recover the full amount of Defendant's balance where it continued to provide and bill legal services despite Defendant's failure to satisfy multiple billing invoices.

The Court finds Plaintiff did not fail to mitigate its damages. The Written Agreement not only states that Defendant is a "longstanding client" of Plaintiff, but further states that Defendant had "a good payment history." (Juo Decl. Ex. A.) Plaintiff was so assured of Defendant's ability and intent to pay that it did not require Defendant to pay an initial deposit as is its ordinary practice. (*Id.*) Moreover, the "Bill and Payment" report shows that payments were credited to Defendant's account until November 30, 2010—just one month before the final billing invoice. (Brashear Decl. Ex. 1.) For these reasons it was reasonable for Plaintiff to believe Defendant would fully compensate it for their services. The Court finds that there is no need to limit Plaintiff's recovery for failure to mitigate.

Account Stated

Plaintiff's claim for account stated seeks the same relief as its claim for breach of contract: $282,247.80 for unpaid legal service. (Mot. 5–6.) Therefore, because the Court determined Plaintiff established a meritorious claim for breach of contract it declines to reach Plaintiff's second cause of action for account stated.

### 3. *The Amount at Stake Weighs in Favor of Default Judgment*

"The fourth *Eitel* factor balances 'the amount of money at stake in relation to the seriousness of the [d]efendant's conduct.'" *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) (quoting *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, the default judgment is warranted." *Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2559 JSW (MEJ), 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006). Further, the Court may consider "whether the amount of money at stake is reasonable, properly documented and contractually justified." *Id.* (internal quotation marks omitted) (citing *Board of Trustees of N. Cal. Sheet Metal Workers v. Peters*, 2000 U.S. Dist. LEXIS 19065, at *5 (N.D.Cal. December 29, 2000)).

Here, Plaintiff seeks $282,247.80 in unpaid legal fees and costs pursuant to the Written Agreement as well as prejudgment interest. Plaintiff proffers a "Bill and Payment Report", statements invoiced to Defendant between September 2008 and December 2010, the Written Agreement, and a record of its legal representation of Defendant in the action against Staples. (ECF No. 18.) The declaration of Scott Brashear, the "Bill and Payment Report", and the billing statements all establish Defendant has an outstanding balance of $282,247.80. (*See* Brashear Decl. Exs. 1, 2.) Further, the rates at which Plaintiff's attorneys were billed are consistent with the terms of the Written Agreement and Defendant never disputed their obligation to pay. (*See* Juo Decl.)

Plaintiff is entitled to damages that would reasonably be expected to place it in

the same position had Defendant fulfilled its contractual obligations. *Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2527776 JSW (MEJ) 2006 WL 2527776, at *5 (N.D. Cal. Aug. 30, 2006). Based on the evidence presented, the Court concludes that the damages Plaintiff seeks are consistent with the terms of the Written Agreement and otherwise appropriate. Therefore, this factor weighs in favor of entry of default judgment.

### *4.  There is No Possibility of Dispute as to Material Facts*

Plaintiff adequately alleged Defendant breached the Written Agreement. Because Defendant failed to respond to Plaintiff's Complaint, it forfeited any challenge to the material facts alleged in Plaintiff's pleading. *See PepsiCo*, 238 F. Supp. 2d at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages"). Accordingly, "no factual disputes exist that would preclude the entry of default judgment." *Vogel*, 992 F. Supp. 2d at 1013.

### *5.  There is Little Possibility Default was Due to Excusable Neglect*

Plaintiff's process server properly served Defendant with the Complaint and Summons pursuant to California Code of Civil Procedure sections 416.10(a) and 415.20(a). (ECF No. 7.) Plaintiff then filed the instant Application and served Defendant by U.S. mail. (ECF No. 16.) This leaves little possibility that default was due to excusable neglect.

### *6.  Policy for Deciding on the Merits Weighs in Favor of Granting Default Judgment*

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, where the defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177 ("Under Fed.R.Civ.P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action"). The Court finds that this factor does not preclude entry of default judgment.

**C.     Prejudgment Interest**

<u>Right to Prejudgment Interest Under 3287(a)</u>

Plaintiff requests prejudgment interest at a rate of 10 percent per annum under California Civil Code sections 3287(a) and 3289(b).  (Mot. 6.)  "In diversity cases, state law governs the award of prejudgment interest." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1522 (9th Cir. 1985).  "Under California Law, prejudgment interest is governed by Civil Code section 3287 and is recoverable in any action in which damages are certain or capable of being made certain by calculation and the right to recover such damages is vested in the plaintiff on a particular day." *Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1072 (N.D. Cal. 2012) (quoting Cal. Civ. Code. § 3287(a)) (internal quotation marks omitted).  Under section 3287, "the court has no discretion, but must award prejudgment interest upon request *from the first day there exists both a breach and a liquidated claim*." *Howard v. Am. Nat. Fire Ins. Co.*, 115 Cal. Rptr. 3d 42, 74 (2010) (emphasis added) (quoting *N. Oakland Med. Clinic v. Rogers*, 76 Cal. Rptr. 2d 743, 746 (1998) (internal quotation marks omitted).  "Courts generally apply a liberal construction in determining whether a claim is certain or liquidated." *Id.*

The Court must determine: (1) whether the damages Plaintiff requests are certain and (2) if so, what particular day the right to recover those damages vested in Plaintiff.  First, the damages Plaintiff requests are certain.  The sum amount of $282,247.80 that Plaintiff seeks is the amount Defendant failed to pay Plaintiff for legal services it performed pursuant to the Written Agreement.  Plaintiff based this amount on a detailed record of the unpaid services it performed on Defendant's behalf and the rates at which both parties agreed to in the Written Agreement.  Both the "Bill and Payment Report" and billing statements affirm that as of the December 31, 2010 invoice, a balance of $282,247.80 is left outstanding on Defendant's account.  Because Plaintiff established Defendant breached the December 31, 2010 invoice, it is entitled to the full amount contained in that statement.

1    Second, the Court determines Plaintiff's right to recover this total amount
2 vested on March 7, 2011. Plaintiff alleges the right to recover vested on February 1,
3 2011. (Mot. 6.) Plaintiff states "[t]he final invoice for December 2010, was sent out
4 in January 2011 for receipt by Accentra in the same month." (Brashear Decl. ¶ 4.)
5 However, the Written Agreement provides that "[e]ach statement will be due *within*
6 *30 days of its receipt*." (Juo Decl. Ex. A (emphasis added).) Under the Written
7 Agreement, the right to recover would vest in Plaintiff on February 1, 2011 only if
8 Plaintiff could establish it sent the invoice on January 1, 2011. Plaintiff alleges that it
9 sent the December 31, 2010 invoice sometime in January 2011 but failed to provide a
10 specific date. (Mot. 5.) The actual date Defendant received the invoice is unknown.
11 Therefore, the Court adopts a conservative approach: the Court assumes Plaintiff sent
12 the invoice on the last day of January, January 31, 2011, and Defendant received the
13 invoice the last day of the first week of February, February 7, 2011—allowing a one-
14 week delivery time. Accordingly, pursuant to the Written Agreement, the right to
15 recover the total amount of Defendant's balance vested in Plaintiff on March 7, 2011.

<u>10 Percent Per Annum Under 3289(b)</u>

   California Civil Code section 3289(b) provides that "[i]f a contract entered into
after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall
bear interest at a rate of 10 percent per annum after a breach." Therefore, since the
Written Agreement does not contain a provision for prejudgment interest, the Court
will impose an interest rate of 10 percent per annum on the $282,247.80 Plaintiff is
owed from March 7, 2011 to the date of payment.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Application for Default Judgment and **AWARDS damages** against Defendant in the amount of $282,247.80 with prejudgment interest at the rate of 10 percent per annum from March 7, 2011 to the date of payment.  (ECF No. 16.)

**IT IS SO ORDERED.**

March 20, 2015

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**